James L. PRICE, Attorney-in-Fact for
Letha Kieth, Appellant,

v.

E. J. WIMBERLY et ux., Appellees.

No. 16998.

Court of Civil Appeals of Texas.

Fort Worth.

March 14, 1969.

Douthitt, Ritter & Stinson, and Thomas E. Stinson, Wichita Falls, for appellant.

Charles A. Allen, Marshall, John R. Lindsey, Jacksboro, for appellees.

OPINION

LANGDON, Justice.

.This, is, a suit against E. J. Wimberly and wife Frances to rescind a lease of grass land. It was presented to the court without a jury.

The appellant (plaintiff) contends that the court erred in holding as a matter of law that delivery of the lease was valid because it was delivered to a third party who handed it over to the lessees in violation of the conditions for delivery agreed upon between lessor and the third party.

We affirm.

The plaintiff owns an undivided one-half interest in 1448.2 acres of land in Jack County, Texas. The other half was purchased by the appellees from a group of heirs represented by Horace Kieth Overbey, who for several years had managed the land for the plaintiff and the said heirs.

The following facts are undisputed: On about January 17, 1968, Mr. E. J. Wimberly called the plaintiff and asked if she wanted to sell her part of the land and she said no. She was then asked about a grass lease and she referred Mr. Wimberly to Horace Kieth Overbey saying he handled her business and it was up to him.

On about January 22, Mr. Overbey called the plaintiff from the home of and in the presence of Mr. E. J. Wimberly concerning the grass lease and inquiring as to her willingness to lease to Mr. Wimberly.

Mrs. Letha Kieth, plaintiff and the lessor in the disputed lease, in her testimony recalled and confirmed the telephone calls of January 17 and 22, 1968, above referred

to, and testified that during the latter conversation Mr. Overbey, " * * * told me that he was at Mr. Wimberly's home and he said, 'We have a good offer on the grass lease and wondered if you would be interested in leasing.' I said, *'Well, if you have worked it out that way I will go along with you.'* " (Emphasis ours.)

She confirmed that she referred Mr. Wimberly to Mr. Overbey to discuss the terms and conditions of the grass lease and testified that Mr. Wimberly, under the questioned lease, would be paying over a ten year period about $8,000.00 more than she had received in any previous ten year period.

The grass lease in question, which admittedly was executed by Mrs. Letha Kieth on January 25, 1968, was mailed to her by Overbey along with a letter from him which read as follows:

"Dear Letha,

"This is the first typing I have done in quite a while. I am inclosing the grass lease we talked about. It will assure you more than eighteen thousand dollars in the next ten years for grass rental. I hope you will be pleased. Mr. Wimberly and his wife are fine people. They have a new brick home on the Ella Marks place close to the highway where we always go through to the Kieth ranch. Mr. Wimberly has many thousands of acres of land in Jack County. He will undoubtedly be there as long as he lives. Quite a lot of his acreage joins the Kieth ranch.

*"You will note that the lease states he is to mail your check directly to you.* If you will sign and have this lease notarized and return it to me *I will see that you get your first check before I deliver the lease to Mr. Wimberly.* (Emphasis ours.)

"Give my best regards to all the children and the grand-children too.

    "Best regards,
    "/s/ Horace Kieth" (Overbey)

The provisions of the lease accompanying the above letter which are pertinent to this appeal are as follows:

"WITNESSETH, That the said Lessor does * * * lease and demise unto the said Lessee * * * (Description of land).

"for the term of five years *beginning the first day of March A.D. 1968* and ending the first day of March A.D. 1973, paying therefor the sum of nine thousand & fifty-one & 25/100 ($9051.25) Dollars, *payable $1810.25 on or before March 1, 1968 and $1810.25 on March 1st of each succeeding year for the term of this lease.*

"At the end of this five year term, lessee shall have the option to extend this lease for another five year term for the same consideration and the same conditions upon the conditions and covenants following:

"First. *That Lessee will well and PUNCTUALLY pay said rents in manner and form as hereinbefore specified,* * * *.

" * * *

"Fourth. *That on failure to pay the rent in advance, as aforesaid, or comply with any of the foregoing obligations, or in violation of any of the foregoing covenants, the Lessor may declare this lease forfeited at her discretion and her agent or attorney shall have the power to enter and hold, occupy and repossess the entire premises hereinbefore described, as before the execution of these presents.*

"*Lessee shall make the annual rent payments in the manner before stated by mailing his check to: Letha Kieth, Box 13, Louise, Texas.*" (Emphasis ours.)

Following her execution of the above lease Mrs. Letha Kieth mailed it back to Overbey accompanied by the following letter:

    "Fri. A.M.

    "1–26–68

"Horace Kieth—Am at P. O. & almost Route Departure time. A hurried note to say my appreciation for a 'Job Well Done'.

"Maybe will get around to writing more later.

"Thanks for everything and say *Hi* to Marie.

"/s/ Letha"

Mrs. Kieth, in response to the question as to whether she mailed the lease back to Mr. Oberbey so he could deliver it to Mr. Wimberly, answered, "Well, let's just say I mailed the lease back to him. I don't think I thought any further than that."

Mr. Wimberly received the lease from Oberbey and asked him, " 'Do you want me to give you a check now for the rent?' " and Overbey said, " 'The thing says on the lease just to mail it to Box 13, Louise, Texas.' " Wimberly then requested his wife to write out a check and mail it that afternoon at Perrin, Texas. It was placed in the postoffice on January 31st, but was postmarked February 1. The envelope containing the check was addressed to Mrs. Letha Kieth, P. O. Box 13, Louise, Texas. It contained a check in the correct amount of the rental due and was payable to Letha Kieth. It was mailed and received well ahead of the March 1, 1968, due date.

According to her testimony Mrs. Kieth called Wimberly on January 31, 1968, on another matter and he told her the check was in the mail. She did not tell him she would refuse to accept the letter and check. There was no testimony that on the occasion of this call she advised or even intimated to Wimberly that she did not intend that the lease agreement be delivered to him. There is no testimony indicating that she gave instructions to this effect to Overbey. As previously stated she had, upon being advised of the proposed terms of the lease to Wimberly, advised Overbey that she would go along with it. In the letter above quoted which she wrote to Overbey and which accompanied the exe-cuted lease she mailed to him she thanked Overbey for, "a Job Well Done."

In her letter to Overbey Mrs. Kieth did not make any request of him to hold the deed until the happening of some contingency or the performance of some act. There is no testimony or evidence in this record to indicate that Overbey parted with the possession of or made delivery of the lease agreement to Wimberly contrary to the lessor's direction. There is no evidence in the record of any request on the part of Mrs. Kieth to Overbey that he deliver the lease subject to conditions of any form or character.

The provisions of the lease which was executed by Mrs. Kieth contained very definite directions as to the manner in which payments thereunder were to be made. It is undisputed that such provisions were fully complied with by Wimberly and that had he not so complied the lease under its own terms could have been cancelled.

The contention that Overbey delivered the deed to the lessee in violation of conditions agreed upon between the lessor (Mrs. Kieth) and Overbey (third party) is without merit. This contention is based upon statements contained in the letter from Overbey to Mrs. Kieth to the effect that if you will sign and return the lease to me, "I will see that you get your first check before I deliver the lease to Mr. Wimberly." Assuming this was a condition agreed upon by Mrs. Kieth and Wimberly it is our opinion in examining the record as a whole, including the letters and the lease itself that such condition if any, was complied with. Overbey made certain that the check was mailed to Mrs. Kieth in compliance with the provisions of the lease. There is no language in the alleged agreed upon condition which would have required Overbey to take personal delivery of the check before delivering the lease. Overbey's letter above quoted made explicit reference to the lease provision requiring the

check be mailed to Mrs. Kieth and this was done.

The letter with Mr. Wimberly's check arrived at the postoffice in Louise, Texas, where Mrs. Kieth was employed. She refused to accept it and after several days had it returned to Wimberly still unopened.

Thereafter on February 6, 1968, the following telegram was sent to Mr. and Mrs. Wimberly, Rt. 1, Perrin, Texas:

"To E. J. Wimberly & Francis

"Rt. 1       Perrin Texas

"This is to advise that I rescind my unaccepted offer to lease one half undivided interest in 1448 acres land in Jack County Texas. If my lease dated Jan 25 1968 has been delivered to you it was delivered without authority & demand is here made for return of same.

"/s/ Letha Keith"

It is undisputed that her offer to lease was accepted by Wimberly and on the terms specified in said lease.

"No particular form of words or action is necessary to constitute delivery of a deed. Manual delivery is not necessary; there may be constructive delivery * * *.

"Personal delivery by the grantor is not required. * * * The manner in which delivery is made is unimportant, provided the intention on the part of the grantor to deliver the deed is manifested. A deed may be delivered by words without acts, by acts without words, or by both words and acts. Any act or declaration of the grantor showing an intention to give present effect to an executed conveyance, is sufficient.

" * * * Every case turns on its own peculiar facts and circumstances as well as the relation of the parties. Where the deed was duly executed and the grantor's purpose and intention was to deliver it or to have it delivered to the grantee, the deed has the same effect as if it had been actually delivered.

"The sufficiency of the facts necessary to constitute delivery of a deed is a *question of law for the court*." (Emphasis ours.) 19 Tex.Jur.2d 361, "Deeds", § 83, "In general". See cases cited in text.

19 Tex.Jur.2d 363, "Deeds", § 84 of the same text, page 363, under the heading, "Intention—As controlling factor", reads as follows:

"The intention of the grantor to deliver the deed is determinative of whether there has been delivery. His intention is shown by all of the facts and the circumstances preceding, attending, and following the execution of the instrument. In addition to the intention to deliver there must be acts tending to show an execution of that intention. The deed must be placed within the grantee's control for the purpose of having it become operative as a conveyance, and with the intent on the part of the grantor to relinquish control of it. The grantor must intend to deliver and the grantee must intend to accept. In determining whether delivery of a deed to a third person is effective as a delivery the question is whether or not the grantor parted with all dominion and control over the instrument at the time of delivery to the third person, with the intent at the very time of delivery that it take effect as a conveyance. The delivery must be unconditional. Whether manual delivery was intended to be immediately effective or whether such delivery was conditional is a question of fact. But if delivery is completed with the required intention, a subsequent change of intention will not affect the transaction. A mental reservation contrary to that expressed by words and deeds will not invalidate delivery of a deed."

All points of error are overruled and the judgment of the trial court is affirmed.

Affirmed.